**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Lawrence Stryker** : | |
| : | |
| Plaintiff, : | Civil Action No. 11-6384 |
| v. : | |
| : | OPINION |
| **Hi-Temp Specialty Metals, Inc.,** : | |
| : | |
| Defendant. : | |

**CECCHI**, **District Judge.**

**I.   INTRODUCTION**

This matter comes before the Court by Plaintiff Lawrence Stryker's ("Stryker") application for an Order to Show Cause requesting 1) a preliminary injunction that would bar Defendant Hi-Temp Specialty Metals, Inc. ("Hi-Temp") from enforcing a non-competition restrictive covenant, and 2) a declaratory judgment that Stryker's ownership, management, operation, control or employment by Mendham Metals LLC will not be a violation of the restrictive covenant.  For the reasons stated herein, Stryker's application is granted in part and denied in part.[1]

---

[1] The Court considers any new arguments not presented by the parties in their papers or at oral argument to be waived.  See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

## II.   BACKGROUND

Hi-Temp is in the business of purchasing, processing and re-selling refractory metals.[2] (Stryker App. 1-2.) Stryker joined Hi-Temp in 1988 as an equal shareholder. (Id. 5.) On December 27, 1999, Joseph Smokovich and a group of investors purchased Hi-Temp from Stryker and the two other shareholders. (Hi-Temp Opp. 2.) As part of this purchase, Stryker and Hi-Temp negotiated an employment agreement (the "1999 Employment Agreement"). (Stryker Reply Ex. A). Importantly, the 1999 Employment Agreement contained a restrictive covenant prohibiting the three shareholders from: 1) engaging in or carrying on "any business, activity, or enterprise which engages in the Business in any part of the Territory;" 2) directly or indirectly employing or offering to employ "any person who is then or was, during the previous two years, an employee, sales representative, or agent of the Company or the Purchaser;" and 3) soliciting "any business involving or relating to the Business from any person or entity that was a customer or supplier of the Company or is a customer or supplier of the Purchaser" or inducing "any customer, supplier, or other person that has a business relationship with the Purchaser to discontinue or reduce the extent of such relationship." (Id.) The restrictions contained in the 1999 Employment Agreement expired on December 27, 2002. (Id.)

On January 1, 2003, Stryker and Hi-Temp entered into a new employment agreement (the "Employment Agreement") for a term of seven years. (Stryker App. Ex. A.) The Employment Agreement contained a non-competition restrictive covenant (the "Restrictive Covenant"):

> [Stryker] hereby covenants and agrees that during the Term and, except if the employment of [Stryker] is terminated pursuant to the provisions of subsection (b) of Section 9 hereof, for a period of two years thereafter and within the Territory,

---

[2] Refractory Metals, including Molybdenum, Tungsten, Tantalum, Niobium and Rhenium, share properties including an extremely high melting point and high hardness at room temperature. (Stryker App. 2.)

> he will not, without the prior express written consent of the Board, at any time, directly or indirectly, on his own behalf or on behalf of any Person: (i) own, manage, operate, control, be employed by, participate in, provide consulting services to, or be connected or associated in any manner with the ownership, management, operation or control of any business which is in competition with the Business (hereinafter defined) engaged in by [Hi-Temp] in any state of the United States or in any foreign country in which any of them are engaged in business at the time of such termination of employment for as long as [Hi-Temp] continues to conduct such business (the "Non-Compete"), (ii) solicit or take any action to cause the solicitation of, or recommend that, any supplier, client, customer, contractor, vendor, agent or consultant of [Hi-Temp] or other person having business relations with [Hi-Temp], discontinue business or cease such relationship, in whole or in part, with [Hi-Temp] (the "Customer Non-Solicit"), (iii) employ any Person employed by [Hi-Temp] at the time of, or during the 12 months preceding, such termination of [Stryker's] employment with [Hi-Temp] (the "Non-Hire") or (iv) solicit for employment (other than through unaffiliated employment recruiting or placement firms or services who are not specifically directed to solicit Executives of [Hi-Temp] or provided with the names of any such Executives) any person employed by [Hi-Temp] at the time of, or during the 12 months preceding such termination of [Stryker's] employment with [Hi-Temp], or otherwise encourage or entice any such Person to leave such employment (the "Executive Non-Solicit"), provided, however, that nothing in this Agreement shall preclude [Stryker] from owning less than 5% of any class of publicly traded equity of any entity. For purposes of this Section 11(a), the term "Business" shall mean the purchase, processing and sale of metal recovered from refractory metal scrap.

(Id.) Stryker's Employment Agreement was automatically renewed through December 2011. (Stryker App. 3.)

On March 10, 2011, Stryker was notified by Hi-Temp that his employment would be terminated effective December 31, 2011. (Stryker App. Ex. B.) On that same day, Hi-Temp sent a letter to its customers informing them that Stryker was no longer employed with the company. (Stryker App. Ex. C.) Since this date, and in accordance with Hi-Temp's request, Stryker has not contacted any Hi-Temp customers or suppliers and has not participated in the trade organizations to which he belongs. (Stryker App. Ex. D; see 12/14/11 Hearing Tr. 25.)

In anticipation of his December 31, 2011 termination, Stryker starting planning the formation of Mendham Metals LLC ("Mendham Metals"), a business that will purchase and sell virgin refractory metals made from ore, rather than from scrap.[3] (Stryker App. 10.) Mendham Metals will focus on brokering and trading these refractory metals and will therefore not be involved in any processing. (Id. at 11.) Stryker advised of his plans to open Mendham Metals on January 2, 2012. (12/14/11 Hearing Tr. 49.)

On November 1, 2011, Stryker filed this Order to Show Cause for a preliminary injunction requesting the Court to prevent Hi-Temp from enforcing the Restrictive Covenant as currently written. Stryker requests that the Court "blue pencil" the Restrictive Covenant from a duration of two years to one year. (Stryker App. 21-22; Hearing Tr. 8.) Stryker also seeks a declaratory judgment that his ownership and operation of Mendham Metals will not violate the Restrictive Covenant.

Hi-Temp argues in opposition that Stryker's declaratory judgment action is not sufficiently ripe to constitute a controversy. Specifically, Hi-Temp argues both that Stryker has not yet created Mendham Metals and that Hi-Temp has not made any attempts to enforce the Restrictive Covenant. (Hi-Temp Opp. 7-11.) Accordingly, Hi-Temp alleges that Stryker lacks standing to bring this declaratory judgment action because the case is not sufficiently ripe to constitute a controversy.

### III.  LEGAL STANDARD

#### A. Declaratory Judgment

"The Declaratory Judgment Act permits a federal court the discretion to 'declare the

---

[3] Mendham Metals will also purchase and sell Nickel and Cobalt-based alloy scrap. (Stryker App. 10.) Nickel and Cobalt are not refractory metals. (Id.)

4

rights and other legal relations of any interested party seeking such declaration,' when there is a 'case of actual controversy.'" Abraham v. Del. Dep't of Corr., 331 F. App'x 929, 931 (3d Cir. 2009) (quoting 28 U.S.C. § 2201). The Supreme Court has established a two-part test for determining whether a claim is ripe for adjudication: (1) courts must "evaluate both the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). "The Third Circuit has further refined that test in the declaratory judgment context." Tait v. City of Philadelphia, 639 F. Supp. 2d 582, 589 (E.D. Pa. 2009). Courts must examine: (1) "the adversity of the interests of the parties;" (2) "the conclusiveness of the judicial judgment;" and (3) "the practical help, or utility, of that judgment." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990).

The "[p]arties' interests are adverse where harm will result if the declaratory judgment is not entered." Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995). "Although the action cannot be based on a contingency, the party seeking declaratory relief need not wait until the harm has actually occurred to bring the action. Thus, in an appropriate circumstance, *a litigant can seek a declaratory judgment where the harm is threatened in the future*." Travelers Ins., 72 F.3d at 1154 (internal citations omitted) (emphasis added). "Yet the threatened harm cannot be 'imaginary or speculative.'" Tait, 639 F. Supp. 2d at 589 (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)). "In order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, [and] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192 (3d Cir. 1990) (internal quotation marks

5

omitted).

### B. Injunctive Relief

"[A]n injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'" Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citations omitted). "The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court." Duraco Prods., Inc. v. Joy Plastic Enters., 40 F.3d 1431, 1438 (3d Cir. 1994). In considering whether to grant a preliminary injunction, a court must review the following factors: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003). A party must produce sufficient evidence of all four factors for the requested injunctive relief to be awarded. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

A party seeking a preliminary injunction must make "a clear showing of immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (quoting ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)). "Establishing a *risk* of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury." ECRI, 809 F.2d at 26 (citations and quotations omitted) (emphasis added). Mere speculation as to an injury that will result, in the absence of any facts supporting such a claim, is insufficient to demonstrate irreparable harm. See Grupo Mexicano De Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 327-30 (1999).

## IV. DISCUSSION

### A. Ripeness

The Court finds that Stryker's claim for a preliminary injunction and declaratory relief is ripe for adjudication.

In support of its argument that this matter is not ripe for adjudication, Hi-Temp cites to McKenna v. PSS World Medical, Inc., No. 09-0367, 2009 WL 2007116 (W.D. Pa. July 9, 2009), in which the court dismissed a declaratory judgment suit seeking a determination of the validity of a restrictive covenant. The court held that the employee's complaint was "not ripe for judicial review" because the employee's complaint did not include any allegations that the plaintiff had been offered or had accepted any employment, or that the employer had made any attempt to enforce the restrictive covenant at issue. Id. at *2-3. Thus, the court dismissed the complaint for lack of ripeness. Id. at *4.

Stryker contends that this matter is ripe for adjudication and cites to Newell Co. v. Lee, 950 F. Supp. 864 (N.D. Ill. 1997). In that case, the defendant signed a restrictive covenant as part of a purchase of the defendant's business. Id. at 866. The defendant later requested from the plaintiff an "okay to proceed" with a line of products that the defendant claimed would not violate the restrictive covenant. Id. at 866. The defendant also suggested to the plaintiff that he may "test the non-compete." Id. The defendant filed an action for declaratory judgment that the restrictive covenant was unenforceable, and the plaintiff subsequently filed a complaint requesting specific performance of the restrictive covenant. Id. at 867. The defendant moved to dismiss the plaintiff's complaint, arguing that the plaintiff's claims for injunctive relief and declaratory judgment were not ripe for adjudication. Id. at 867-68. The court disagreed, stating

that the defendant's intention to engage in a business venture that would potentially compete directly with plaintiff's product line was sufficient to establish ripeness of the plaintiff's claims. Id. at 868. The court relied on "defendant's alleged threat to 'test' the [restrictive covenant], defendant's stated intention to participate in activities that would allegedly compete with plaintiff and violate the Covenant, and defendant's rejection of plaintiff's interpretation of the Covenant." Id.

Also on point is Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 30 (S.D.N.Y. 2010), where the court found a matter involving similar facts ripe for adjudication. In that case, a former employee sought, inter alia, a declaration that certain aspects of the restrictive covenant contained in her employment agreement were void and unenforceable. The employer moved for summary judgment and argued that the claim was not ripe for adjudication. The court disagreed, focusing on the fact that the former employee "unequivocally intend[ed] to compete against [the employer] as soon as possible." Id. at 40. In fact, the former employee had interviewed for a position with one of the employer's competitors, and that interviewer had expressed concern about the possibility of litigation if the former employee were eventually hired. Id. Further, the former employee had been offered a position with a competitor that she intended to accept "in the near future" if she did not find other work. Id. at 41. Finally, the employer had also refused to agree *not* to enforce the restrictive covenant, leaving the former employee (and any potential employer) uncertain as to whether she would be "embroiled in a lawsuit" if she accepted a position with a competitor. Id. The Court explained that "[r]esolution of such uncertainty is one of the main purposes of declaratory judgments," and concluded that the former employee's declaratory judgment claim presented "an immediate and substantial controversy between parties with adverse legal interests" that was "ripe for adjudication." Id.

The facts in this case are more akin to Newell and Arakelian than McKenna.  Here, Stryker has evidenced a concrete plan to form Mendham Metals.  (12/14/11 Hearing Tr. 49.) The formation and operation of Mendham Metals is not contingent on any funding issues or the hiring of additional employees.  (Id.)  Although Stryker contends that his sale of virgin refractory metals from ore will not violate the Restrictive Covenant, Hi-Temp argues that the sale of refractory metals, from *any* source, in direct competition with Hi-Temp will necessarily violate the Restrictive Covenant.  (Smokovich Cert. ¶ 15; 12/14/11 Hearing Tr. 14-17; 26-28; 39-40; 44-45; 48.)  Furthermore, Stryker has requested that this Court "blue pencil" the Restrictive Covenant from a duration of two years to one year, thereby allowing Stryker to sell refractory metals recovered from scrap one year after his effective termination from Hi-Temp.  (Stryker App. 21-22.)  Stryker's request is based on his assertion that the Restrictive Covenant, as written, is unenforceable under New Jersey law.  (Stryker App. 12-19.)  These facts establish the ripeness of Stryker's claims.  As stated in Newell, a "[p]laintiff need not wait until defendant acts on his intention to bring an action to prevent what might well be irreparable harm."  Newell, 950 F. Supp. at 868.[4]

---

[4] After briefing was completed, Hi-Temp submitted an additional case, Reilly v. Ceridian Corp., No. 11-cv-1738, 2011 U.S. App. LEXIS 24561, at *20 (3d. Cir. Dec. 12, 2011), in support of its ripeness argument.  In that case, the Third Circuit affirmed the district court's dismissal of the plaintiffs' case for lack of standing.  The plaintiffs, employees of a payroll customer, sued the defendant, a payroll services company, for harm that they allegedly suffered as a result of a security breach experienced by the defendant.  Id. at *2-3.  Plaintiffs alleged that they: (1) had an increased risk of identity theft, (2) incurred costs to monitor their credit activity, and (3) suffered from emotional distress.  Id. at *3.  The Third Circuit agreed with the district court that the plaintiffs' allegations of hypothetical, future injury were insufficient to establish standing.  The plaintiffs merely speculated that, because of the security breach, their personal information would be misused.  Id. at *7.  The Court explained that "[u]nless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information,

Having found that the controversy between the parties is sufficiently ripe, the Court will now turn to Stryker's request for a preliminary injunction and a declaratory judgment.

## B. **Preliminary Injunction**

Stryker has failed to demonstrate that injunctive relief is warranted in this case. Stryker has provided insufficient evidence indicating that he will suffer *immediate irreparable* harm if the Court denies his request for a preliminary injunction. In addition, the remaining three factors of likelihood of success on the merits, irreparable harm to Hi-Temp, and the public interest, also do not weigh in favor of the granting of injunctive relief.

　　1. Irreparable Harm

Stryker argues that he is likely to suffer irreparable harm to his reputation and goodwill in the absence of injunctive relief. Stryker first points to Hi-Temp's March 10, 2011 letter to its customers explaining that Stryker was no longer an officer, executive or authorized sales representative of Hi-Temp. (Stryker App. Ex. C.) Stryker states "[i]t is *likely* that Hi-Temp's cryptic letter of March 10, 2011 has already caused significant damage to Stryker's industry relationships and business goodwill" and that "[w]ithout injunctive relief, Mr. Stryker would be denied the opportunity to repair those relationships." (Stryker App. 19-20.) (emphasis added). Stryker further argues that the Restrictive Covenant "deprives Mr. Stryker of his ability to earn a living in the Refractory Metal scrap industry for two years." (Id. at 20.)

---

and thus, no harm." Id. at *7-8. Thus, the Third Circuit in Reilly found a lack of *standing* based on hypothetical harms. The Court finds the Reilly case distinguishable. The Reilly case involved speculative harms relating to a potential identity theft. This case, on the other hand, involves a real controversy regarding whether the Restrictive Covenant is enforceable and whether Stryker's imminent formation of Mendham Metals will violate the Restrictive Covenant. District courts considering facts similar to this case (i.e. the Newell and Arakelian cases) have found sufficient *ripeness* under the circumstances. Therefore, the Court holds that the controversy between Stryker and Hi-Temp is sufficiently ripe for adjudication.

A blanket statement that Hi-Temp's letter, which was sent more than seven months prior to Stryker filing suit, "likely" caused damage to Stryker's relationships and goodwill, in the absence of any facts supporting such a claim, is not enough to show "immediate irreparable injury." ECRI, 809 F.2d at 226; Grupo Mexicano, 527 U.S. at 327-30.  The Court's discussion in Trico Equip., Inc. v. Manor, No. 08-5561, 2009 WL 1687391, at *9 (D.N.J. June 15, 2009) is instructive.  In determining whether to grant a preliminary injunction enforcing a restrictive covenant, the Court looked at the potential harm to the defendant employee.  Finding that the defendant had "other employment skills," that the "prohibition would be temporary," that the defendant "agreed to the restrictions knowing their significance," and that the defendant "agreed he would be able to find other work," the Court enforced the restrictive covenant.  Id.

Here, Stryker advised of his intention to sell virgin refractory metals obtained from ore, and non-refractory metals.  Stryker will necessarily utilize his "industry relationships and business goodwill" to run Mendham Metals.  Stryker concedes that his goodwill is still solid enough to make the formation and operation of Mendham Metals a worthwhile endeavor.  Otherwise, Stryker would argue – which he does not – that enforcement of the Restrictive Covenant would make *any* employment in the metals field impossible for the next two years.  In the same vein, by planning the formation of Mendham Metals, Stryker has implicitly admitted that he is "able to find other work."  Despite Stryker's inability to purchase or sell refractory metals obtained from *scrap*, he is still able to "earn a living" selling virgin refractory metals obtained from ore and non-refractory metals.  (12/14/11 Hearing Tr. 34-35; 37-38.)  Thus, Stryker's claims are insufficient to satisfy the irreparable harm prong.

Although relief is not warranted based on Stryker's failure to show irreparable harm, the Court notes that the remaining three factors also do not support the granting of injunctive relief.

2. Likelihood of Success on the Merits

Stryker has not established a likelihood of success on the merits. Under New Jersey law, restrictive covenants are enforced only when they are "reasonable." Solari Indus., Inc. v. Malady, 55 N.J. 571, 576 (1970). A restrictive covenant will generally be found reasonable where it: i) protects the legitimate interest of the employer; ii) imposes no undue hardship on the employee; and iii) is not injurious to the public.[5] Id. Here, Hi-Temp has legitimate interests in the protection of its confidential customer and pricing information. (12/14/11 Hearing Tr. 30-32.) See Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 638 (1988) (explaining that "employers may have legitimate interests in protecting information that is not a trade secret or proprietary information, but highly specialized, current information not generally known in the industry, created and stimulated by the research environment furnished by the employer"). Hi-Temp argues that "Stryker is in possession of all of Hi-Temp's trade secrets, confidential and business information" and "has all the information needed to unfairly compete with Hi-Temp including, but not limited to, pricing, costing, supply, supply source, available technology of Hi-Temp; Hi-Temp's long range business plans; and customers' history." (Hi-Temp Opp. 20.) In addition, Stryker believes that the Restrictive Covenant does not restrict his ability to solicit Hi-Temp's current customers for the sale or purchase of anything other than refractory metals obtained from

---

[5] The parties disagree as to whether the Restrictive Covenant was incidental to the sale of Hi-Temp in 1999 or was negotiated separately in a subsequent employment agreement. A "seller's incidental noncompetitive covenant, which is designed to protect the good will of the business for the buyer, is freely enforceable in the courts." Solari, 55 N.J. at 576. Such covenants incidental to the sale of a business carry a higher burden for the movant seeking injunctive relief from enforcement. Because this Court finds that Stryker will not likely succeed on the merits even under the "reasonableness" standard for covenants not incidental to the sale of a company, which carries a lesser burden for Stryker, this Court need not decide the contested issue.

scrap.  (Stryker App. 22.)  Thus, the Court finds that Hi-Temp has legitimate business interests under the first prong of Solari.

The Court also finds that Stryker cannot show "undue hardship."  The Court's discussion in Trico, 2009 WL 1687391, at *7, is helpful on this issue.  There, the Court explained that in considering whether the scope of a non-compete agreement "imposes an undue hardship, a court should consider 'the likelihood of the employee finding work in his field elsewhere.'"  Id.[6]  The Court also noted that a "showing of *personal hardship* alone is insufficient to establish *undue hardship*."  Id. (emphasis added).  As explained above, Stryker will still be able to "earn a living" selling refractory metals obtained from ore and non-refractory metals.  (12/14/11 Hearing Tr. 34-35; 37-38.)  Moreover, although Stryker contends that the Restrictive Covenant prohibits him from selling refractory metals obtained from scrap anywhere in the world (Stryker App. 16-18), Hi-Temp has made clear that it only intends to enforce the Restrictive Covenant as it pertains to Hi-Temp's specific customers and suppliers.  (12/14/11 Hearing Tr. 26-27; 39-40; 44-45; 48.)[7]  Hi-Temp has construed the Restrictive Covenant to allow Stryker to pursue work in the "greater metals industry anywhere he wants in the world," as long as Stryker does not compete directly with Hi-Temp.  (Id. 27.)  Therefore, the Court finds that the Restrictive Covenant does not impose an undue hardship on Stryker.

---

[6] The Trico Court also noted that New Jersey courts generally find a two-year restrictive period following termination of employment to be "reasonable."  Id. at *7.

[7] Stryker argues at length that he personally developed extensive contacts with companies that ultimately became Hi-Temp's suppliers of Tantalum scrap and purchasers of Molybdenum and Tungsten, and that he "cannot be prevented from using his experience in the Refractory Scrap metal industry…as a basis for earning a living upon his termination of employment with Hi-Temp."  (Stryker App. 13-15.)  However, given that Stryker will undoubtedly use this knowledge and information in his ownership and operation of Mendham Metals, and in particular in his sale of virgin refractory metals obtained from ore and non-refractory metals, the Court does not find that enforcement of the Restrictive Covenant will cause Stryker any undue hardship.

Finally, enforcement of the Restrictive Covenant will not be injurious to the public. Given the Court's findings that Hi-Temp has legitimate interests to protect and that Stryker will be able to maintain a living in both the refractory and non-refractory metals fields, the Court does not believe that the Restrictive Covenant "stifles competition." (Stryker App. 15, 18-19.) In sum, because the Restrictive Covenant appears reasonable under Solari, the Court finds that Stryker is unlikely to succeed on the merits of his claim.

    3. Irreparable Harm to Hi-Temp

Another factor in the preliminary injunction inquiry, the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued, also does not support the granting of injunctive relief. Hi-Temp has only thirty suppliers and thirty customers. (Hi-Temp Opp. 4.) Given that Stryker is very familiar with these entities – according to Stryker, he developed the majority of these relationships himself – Stryker will likely view them as business prospects in direct competition with Hi-Temp. Therefore, blue-penciling the agreement to reduce the time period from two years to one year will undoubtedly cause additional harm to Hi-Temp's business. (Hearing Tr. 54-55.)

    4. The Public Interest

Finally, the Court does not find that the public interest will be negatively affected by enforcement of the Restrictive Covenant. As explained above, two-year restrictive covenants are generally found to be reasonable in New Jersey, and there is no indication that this Restrictive Covenant was entered into for the sole purpose of "stifling competition." See Trico, 2009 WL 1687391, at *7 (holding two-year restriction reasonable); see Community Hosp. Group, Inc. v. More, 365 N.J. Super. 84, 105 (N.J. Super. Ct. App. Div. 2003) (explaining that restrictive

14

covenants containing a two-year period of restriction have generally been upheld as reasonable by New Jersey courts).

In sum, the Court holds that Stryker has not offered sufficient evidence of all four factors for the requested injunctive relief. The Court therefore denies Stryker's request to "blue pencil" the Restrictive Covenant.

### C. Declaratory Judgment

Stryker also seeks a declaratory judgment that his ownership and operation of Mendham Metals will not violate the Restrictive Covenant. The Restrictive Covenant clearly states that the term "Business" means "the purchase, processing and sale of metal *recovered from refractory metal scrap*." (Stryker App. Ex. A) (emphasis added). Given the plain language of the Restrictive Covenant, which both parties negotiated and agreed to, the Court holds that Stryker's sale of virgin refractory metals obtained from ore will not be a violation of the Restrictive Covenant. Thus, to the extent that Mendham Metals will deal only in virgin refractory metals obtained from ore, Stryker's ownership and operation of this company will not violate the Restrictive Covenant.[8]

---

[8] The Court appreciates Stryker's offer to provide Hi-Temp with letters of certification from Mendham Metal's suppliers stating that any ingot purchased by Mendham Metals was derived from ore as opposed to scrap. (Stryker Suppl. Cert. 13.) Hi-Temp is free to request such letters from Stryker as it deems appropriate.

## V. CONCLUSION

In sum, the Court denies Stryker's motion for injunctive relief. The Court holds, however, that Stryker's purchase and sale of virgin refractory metals obtained from ore will not violate the Restrictive Covenant.

An appropriate Order follows.

       s/Claire C. Cecchi      
**CLAIRE C. CECCHI, U.S.D.J.**

DATED:  March 2, 2012