NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE STRYKER,<br><br>      Plaintiff,<br>v.<br><br>HI-TEMP SPECIALTY METALS, INC.,<br><br>      Defendant. | Civil Action No. 11-6384 (CCC)<br><br>OPINION |

F<small>ALK</small>, U.S.M.J.

  This matter comes before the Court upon Plaintiff's motion for leave to amend his Complaint (CM/ECF No. 42) and Defendant's motion for leave to amend its Answer and Counterclaim (CM/ECF No. 52). Both motions are opposed. The motions are decided on the papers. Fed.R.Civ.P. 78(b). For the reasons set forth below, both motions are **granted**.

BACKGROUND

A. *Factual*

  This action arises out of the termination of an employment relationship between Plaintiff Lawrence Stryker ("Plaintiff" or "Stryker") and Defendant Hi-Temp Specialty Metals, Inc. ("Hi-Temp" or "Defendant"). Hi-Temp is in the business of buying,

1

processing and reselling refractory metals. On January 1, 2003, Stryker and Hi-Temp entered into an Employment Agreement ("Employment Agreement"). The Employment Agreement contained a noncompetitive restrictive covenant ("Restrictive Covenant") precluding Stryker from working in the refractory metal scrap industry for two years following the date of his termination. (Compl. ¶ 31.) According to Plaintiff, the Employment Agreement also contained a repurchase clause providing Stryker with the right to require Hi-Temp or its parent company, Hi-Temp Acquisition Corporation ("Hi-Temp Acquisition") (collectively "Hi-Temp Companies"), to purchase his shares in Hi-Temp ("Shares") upon termination of his employment. (Compl. ¶ 30.)

On March 10, 2011, Stryker was notified by Hi-Temp that his employment would be terminated effective December 31, 2011. (Compl. ¶ 44.) In anticipation of his termination, Plaintiff started planning the formation of Mendham Metals, LLC ("Mendham Metals"), a business expected to purchase and sell refractory metals made from ore. Plaintiff alleges that on March 22, 2011, he provided Hi-Temp with notice of his intention to require Hi-Temp Companies to purchase his Shares. (Compl. ¶ 54.) Thereafter, Stryker allegedly provided Hi-Temp Companies with formal notice pursuant to the repurchase clause and demanded that the Shares be purchased by June 5, 2012; he also demanded financial data to determine the value of the Shares. Hi-Temp Companies did not purchase the Shares.

**B.**  *Procedural*

On October 31, 2011, Stryker filed a verified complaint. On November 1, 2011, Stryker filed an order to show cause seeking, *inter alia*, a declaratory judgment that his ownership and operation of then soon to be formed Mendham Metals[1] would not violate the Restrictive Covenant. According to Plaintiff, Mendham Metals would exclusively trade in refractory metal obtained from ore, as opposed to scrap. (Pl.'s Opp'n 3.) On

---

[1]Stryker formed Mendham Metals, LLC on January 12, 2012, more than a month after Hi-Temp filed its Answer and Counterclaim. (Plaintiff's Brief in Opposition ("Pl.'s Opp'n") 3.)

December 5, 2011, Hi-Temp filed an Answer and Counterclaim. In an Order and Opinion dated March 2, 2012, the Court declared that Stryker's ownership and operation of Mendham Metals would not violate the Restrictive Covenant. (CM/ECF Nos. 19 and 20.) The Court found that the Restrictive Covenant governed only metal "*recovered from refractory metal scrap*," and therefore concluded that "to the extent Mendham Metals will deal only in virgin refractory metals obtained from ore, Stryker's ownership and operation of this company will not violate the Restrictive Covenant." (CM/ECF No. 19.)

On April 30, 2012, Hi-Temp filed a motion to amend the Answer and Counterclaim to, *inter alia*, add Mendham Metals as a counterclaim-defendant.[2] (CM/ECF. No. 21). The Court denied without prejudice Hi-Temp's requested leave to add Mendham Metals. (CM/ECF No. 27.) Thereafter, the Court entered a Pretrial Scheduling Order on March 7, 2013, pursuant to which discovery is set to close on November 8, 2013 and any motion to add new parties or to amend the pleadings were to be filed by June 14, 2013. (CM/ECF N. 34.) Styker and Hi-Temp filed the instant motions on June 14, 2013 and August 14, 2013, respectively.

    1. Motion to Amend the Complaint

Stryker seeks leave to amend its Complaint to add Hi-Temp Acquisition as a defendant and to add a single count for specific performance against both Hi-Temp and Hi-Temp Acquisition. Noting that the Complaint seeks an accounting from Hi-Temp and its related companies, Plaintiff maintains that the inclusion of a count for specific performance will not require additional discovery as the value of the Shares and the appropriate repurchase price has been at issue since the commencement of the action. (Plaintiff's Brief in Support ("Pl.'s Br.") 5.)

Hi-Temp opposes the motion arguing that a claim against Hi-Temp Acquisition is

---

[2] Stryker moved to dismiss the Counterclaim on January 9, 2012. (CM/ECF No. 16.) On June 6, 2012, the Court administratively terminated Stryker's motion to dismiss the Counterclaim pending a decision on Hi-Temp's motion to amend. (CM/ECF No. 24.)

futile because it is not a party to the Employment Agreement and therefore cannot be compelled to repurchase Stryker's Shares.[3]  (Defendant's Brief in Opposition ("Def.'s Br.") 1.)  Noting that Plaintiff failed to add Hi-Temp Acquistition as a defendant despite the fact that the litigation commenced nearly two years ago, Defendant questions Styker's purportedly unexplained delay in filing its claims for specific performance.  (Def.'s Br. 2.)  Hi-Temp also challenges the jurisdiction of this Court contending that Stryker failed to set forth in its proposed pleading an independent basis for federal jurisdiction over Hi-Temp Acquisition.  (Id.)

    2. Motion to Amend the Answer and Counterclaim

Hi-Temp seeks leave to amend its Counterclaim to add Mendham Metals as a counterclaim-defendant and to assert claims against it for tortious interference with prospective economic advantage and misappropriation of trade secrets.  Acknowledging that the Court previously denied a motion to add Mendham Metals as a counterclaim-defendant, Hi-Temp points out that since that time it has learned through discovery of "substantial misdeeds" by Stryker and Mendham Metals to properly plead its claims.  (Def.'s Br. 1.)  Specifically, Hi-Temp claims that Stryker and Mendham Metals have "openly competed with Hi-Temp in the refractory metal scrap business" in violation of the Restrictive Covenant and have "improperly purloined and then disclosed trade secrets" obtained by Stryker while employed by Hi-Temp.  (Id.)

Pointing out that Hi-Temp's motion was filed on August 14, 2013, two months after the date by which all motions to amend were to be filed under the Pretrial Scheduling Order, Plaintiff contends that Hi-Temp's motion should be denied as untimely.  Stryker also opposes the motion asserting that the proposed claims against Mendham Metals are futile.  Specifically, Plaintiff maintains that Hi-Temp's proposed

---

[3]Hi-Temp has taken the position that Stryker's notices for exercise of the repurchase clause are legally defective because Stryker has materially breached the Employment Agreement and therefore is not entitled to the benefits of its terms and conditions.  (Def.'s Br. 2)

Amended Counterclaim fails to state a claim against Mendham Metals for tortious interference arguing, among other things, that Mendham Metals has not sold, purchased or processed refractory metal scrap for various Hi-Temp customers. (Pl.'s Br. 16-20.) Plaintiff also contends that Hi-Temp's proposed pleading fails to state a claim for misappropriation of trade secrets because it "fails to make a plausible showing that either []Stryker or Mendham Metals used Hi-Temp's alleged 'trade secrets' in competition with Hi-Temp to its detriment." (Pl.'s Br. 22.)

## DISCUSSION

### A. *Legal Standard for Amendment*

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Foman v. Davis, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the Court's sound discretion. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1970).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau

5

Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted). Thus, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (emphasis added); see also 6 Wright, Miller & Kane Federal Practice and Procedure, §1487 (2d ed. 1990).

### B. *The Proposed Amended Complaint*

Plaintiff's proposed claim against Hi-Temp Acquisition is not so "clearly futile" so as to deny the motion to amend. Harrison Beverage Co., 133 F.R.D. at 468. A party seeking to state a claim for specific performance must also have alleged a valid and enforceable contract. See Marioni v. 94 Broadway, Inc., 274 N.J. Super. 588, 598-99 (App. Div. 2005), certif. denied, 183 N.J. 591 (2005). Here, Plaintiff alleges a valid Employment Agreement. Specifically, Plaintiff alleges in Count VI of his proposed Amended Complaint that the "Employment Agreement was a contract for which performance was expected and intended." (Compl. ¶ 108.) Plaintiff further alleges that Hi-Temp and Hi-Temp Acquisition have failed to repurchase Stryker's Shares pursuant to the terms and provisions of the Employment Agreement. As a remedy, Plaintiff seeks among other things, specific performance. (Compl. ¶ 109; Employment Agreement § 5(c)(i)).

The Court recognizes that Hi-Temp Acquisition may not be a signatory to the underlying contract.[4] Therefore, it is conceivable that Stryker may not have success on the merits of his claim.[5] The Court is satisfied nonetheless that Plaintiff has pled sufficient facts, at least in this limited context of a motion to amend, to conclude that the

---

[4] The Court also takes notice that the Employment Agreement is replete with references to Hi-Temp Acquisition as it relates to the repurchase of Shares.

[5] Plaintiff argues that Hi-Temp Acquisition is not a disinterested third party to the Employment Agreement and that it has duties under and reaps benefits from the contract. Although that very well could be the case, the merits of Plaintiff's claim is not before the Court now.

6

claim is not so clearly futile so as to deny the leave requested.[6]

### C. *The Proposed Amended Answer and Counterclaim*

The issue before the Court is whether Hi-Temp's motion is untimely and whether the proposed claims are futile.

1. Timeliness of Hi-Temp's Motion

The Pretrial Scheduling Order in this case provided that any motion to add new parties, whether by amended or third-party complaint, must be filed by June 14, 2013. (CM/ECF No. 34.)  Hi-Temp's motion was filed on August 14, 2013, two months after the cut-off.  (CM/ECF. No. 52.)

A party seeking to amend the pleadings after the deadline must satisfy the requirements of Rule 16(b)(4)—the party must show good cause.  See Fed.R.Civ.P. 16; Grasso v. Consolidated Rail Corp., No. 12-398, 2013 WL 3167761 at *5 (D.N.J. June 20, 2013); see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (good cause standard when determining the propriety of a motion to amend after the deadline elapsed).  Whether "good cause" exists under Rule 16 rests primarily on the diligence, or lack thereof, of the moving party.  GlobespanVirata, Inc. v. Texas Instruments, Inc., No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005).  In determining whether good cause exists, courts typically consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired.  See Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121, 2009 WL 2905471, at *16

---

[6]Hi-Temp raises the confusing argument that there is no subject matter jurisdiction stating that Plaintiff failed to allege monetary damages against Hi-Temp.  Whether subject matter jurisdiction exists is determined at the time the complaint is filed.  See Frett-Smith v. Vanterpool, 511 F.3d 396, 399 (3d Cir. 2008) (subject matter jurisdiction is determined at the time the complaint is filed).  Given the fact that subject matter jurisdiction was established at the time this case was commenced, the Court has supplemental jurisdiction over any of the added claims.  See 28 U.S.C. § 1367.

(D.N.J. Sept. 8, 2009) (denying plaintiff's motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline").

It bears noting at the outset that Hi-Temp attempted to join Mendham Metals long before the deadline when it filed its initial motion to amend on April 30, 2012. (CM/ECF No. 28.) According to Hi-Temp, it diligently prepared its second motion to amend as soon as it obtained more detailed information revealing Mendham Metals's alleged wrongdoing. (Defendant's Reply in Support of Motion ("Def.'s Reply") 3.) Hi-Temp states that it received a production with approximately 13,399 documents on May 15, 2013, and then again on June 7, 2013, only days before the deadline to amend. (Id.) Hi-Temp further explains that Hi-Temp and its counsel worked diligently to review the documents over the following several months and moved quickly to prepare its second motion to amend. (Id.)

The Court finds that Hi-Temp exercised reasonable diligence in filing its motion to amend. It is understandable that Hi-Temp would not be able to review and catalog the documents and prepare its motion within days of their receipt. Likewise, it is conceivable that it could take Hi-Temp two months to cull through the documents and prepare its motion.

    2. Futility

Hi-Temp's proposed causes of action against Mendham Metals for tortious interference with a prospective economic advantage and misappropriation of trade secrets are not so "clearly futile" so as to deny the motion to amend. Harrison Beverage Co., 133 F.R.D. at 468. To state a claim for tortious interference with economic advantage under New Jersey law, a plaintiff must allege: (1) an existing or reasonable expectation of benefit; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the economic benefit but for the interference, and (5)

8

damages. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993).

Here, Hi-Temp alleges in Count II of its proposed Amended Counterclaim sufficient facts, at least in this limited context of a motion to amend, for tortious interference. (Compl. ¶¶ 14-22.) Hi-Temp alleges in its pleading very specific acts of purported wrongful interference by Mendham Metals and has identified at least two long-term customers that have withdrawn or reduced their business with Hi-Temp as a result of Mendham Metals's malicious interference. (Compl. ¶¶ 14-22.). Stryker's argument that Mendham Metals has not engaged in business with Hi-Temp's longtime customers does not defeat the motion to amend. While it is conceivable that Stryker and Mendham Metals ultimately may succeed in defending against the tortious interference claim, the merits of Hi-Temp's claim is not before the Court now and is not a basis for denial of leave.

Hi-Temp also seeks to assert a cause of action for misappropriation of trade secrets. A plaintiff must show: (1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff, and (6) the plaintiff took precautions to maintain the secrecy of the trade secret. Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 430 (3d Cir. 1982).

Hi-Temp alleges in Count IV of its proposed Amended Counterclaim the elements sufficient to state a claim, at least for purposes of this motion, for misappropriation of trade secrets against Mendham Metals. Hi-Temp identifies by category the trade secrets at issue, including, confidential business documents and technical processes unique to Hi-Temp—all information that is not generally known or ascertainable to others. (Compl.¶ 32). See Howmedica Osteonics Corp. v. Zimmer, Inc., No. 11-1857, 2012 WL 5554543,

9

at *9 (D.N.J. Nov. 14, 2012) (Under New Jersey law a trade secret is generally defined as "information which derives independent economic value from not being generally known or ascertainable by others, and which is the subject of efforts to maintain secrecy."). Asserting an alter ego theory, Hi-Temp proceeds to allege that Stryker and Mendham Metals wrongfully used these trade secrets to compete with Hi-Temp in the refractory metal marketplace.  (Compl.¶ 33).  Accordingly, the Court finds that Hi-Temp's proposed claims against Mendham Metals for misappropriation of trade secrets is not so "clearly futile" so as to deny the motion to amend.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to amend his Complaint and Defendant's motion for leave to amend its Answer and Counterclaim are **granted**.

s/Mark Falk<br>
**MARK FALK**<br>
**United States Magistrate Judge**

**Dated: October 9, 2013**